United States District Court
Southern District of Texas

**ENTERED**

May 14, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Nameah Helaire, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 4:25-cv-03547 |
| v. | § § | |
| Houston Police Department, et al., | § § § | |
| *Defendants.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

This is a civil rights case. Defendant Antonio Villarreal, an officer with the Houston Police Department, has moved to dismiss Plaintiff Nameah Helaire's complaint (Dkt. 1) under Fed. R. Civ. P. 12(b)(6). Dkt. 12. Because Helaire failed to respond, the motion is deemed unopposed. S.D. Tex. L.R. 7.4. Regardless, after carefully reviewing the motion, the record, and the applicable law, the Court recommends that the motion be granted and all claims against Officer Villarreal be dismissed.

## Background

The following facts are taken as true at this stage. Helaire complains that she was arrested on April 17, 2021 by an officer she refers to both as "Christian Villarreal" and "Villarreal AC." *See* Dkt. 1-2 at 6, 12-14. According to the complaint, a passerby called the police after observing a third party,

Bryan Newsome, physically assaulting Helaire in his car. *See* Dkt. 1-2 at 14. Officers arrived 40 minutes later and arrested both Helaire and Newsome. *See id.* The assault charge against Newsome was later dismissed. *Id.*

Helaire was arrested again on June 17, 2023 after Gregory Hanna—with whom she was embroiled in a child custody dispute, *see* Dkt. 1-2 at 4—reported that Helaire burned his truck. Dkt. 1 at 6. Helaire claims that she was falsely accused, faulting the Houston Police Department ("HPD") for taking Hanna's "version of events" and failing to ask Helaire first if the accusation was true. Dkt. 1-2 at 5. The complaint acknowledges that there was a warrant authorizing her arrest. *See* Dkt. 1 at 6. The charges were later dropped. Dkt. 1-2 at 5. But Helaire maintains that the accusation caused her mental anguish and reputational harm that has made it difficult to secure stable housing or employment. *Id.* at 6-7.

Helaire later asked authorities to investigate her June 17, 2023 arrest, but the ensuing investigation was allegedly inadequate. *See* Dkt. 1-2 at 5. Helaire contacted the Family Violence Unit numerous times between July 10 and July 15, 2025, but did not receive the information she sought. Dkt. 1 at 6. She reported this issue to Officer Daniel Nunez of Internal Affairs. *Id.* Neither he nor Sergeant Angel August or Officer Amtaro Montoya from the Family Violence Unit intervened or investigated the matters she raised. *Id.*

On July 16, 2025, Helaire submitted two incident reports.  The first listed "Austin/August," "A Montoyo (9030)," and "Christian Villarreal" as the relevant officers and discussed her effort to reopen the investigation of her arson arrest.  Dkt. 1-2 at 2-11.  This report also complained that "HPD officers shone a flashlight through [Helaire's] mother's windows without a warrant" in June 2025.  Dkt. 1-2 at 7; *see also id.* at 10.  Helaire submitted a second incident report involving "Antonio Roman Badge 10636" concerning "Officer Rome's" role in her arson arrest.  *See* Dkt. 1-2 at 19-22.

An attached letter from Officer Nunez dated July 21, 2025 explained that the Internal Affairs Division found that Helaire's allegations did not reflect any misconduct by HPD members.  Dkt. 1-2 at 1.  In addition, "[t]he investigative division did investigate [her] case" but "the Harris County District Attorney's office declined charges."  *Id.*

On July 30, 2025, Helaire sued Officers Villarreal, Christian Rome, Nunez, Montoya, Sergeant August, the Harris County District Attorney's Office, and the Houston Police Department, asserting claims under 42 U.S.C. § 1983.  Dkt. 1 (complaint).  On October 3, 2025 Villarreal moved to dismiss all claims against him, invoking qualified immunity.  Dkt. 12.  Helaire did not respond.  The motion is ripe for resolution.

## Legal standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

*Pro se* pleadings are liberally construed. *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

4

(per curiam)). But "regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Prescott v. UTMB Galveston Tex.*, 73 F.4th 315, 318 (5th Cir. 2023) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam) ("[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

## Analysis

Officer Villarreal asserts that qualified immunity bars Helaire's claims. Dkt. 12 at 6. Helaire has not rebutted that defense because she failed to respond. Moreover, dismissal is further warranted because Helaire has not alleged a viable Section 1983 claim[1] against Villarreal. Her remaining state law claims should also be dismissed.

## I.    Legal framework for qualified immunity

Qualified immunity is an affirmative defense that shields government officials from civil liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). At the motion to dismiss stage, a plaintiff must "plead specific facts that both

---

[1] The complaint mentions *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Dkt. 1 at 4, but none of the defendants are federal officials. The reference to *Bivens* is therefore disregarded.

5

allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015) (internal quotation marks and citation omitted).

Overcoming qualified immunity requires sufficient allegations both that (1) the defendant's conduct, as alleged, violated the plaintiff's constitutional rights; and (2) the defendant's conduct was objectively unreasonable in light of clearly established law. *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004). For the second requirement, the Court determines "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). A right was "clearly established" if "a legislative directive or case precedent" made it "sufficiently clear such that every reasonable officer would have understood that what he is doing violates the law." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020).

## II.    **Helaire failed to rebut the qualified immunity defense.**

Helaire's failure to respond to Officer Villareal's invocation of qualified immunity is fatal to her claims. *See* Dkt. 12 at 6 (raising qualified immunity). The Fifth Circuit's "well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other

6

dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). And because Helaire has the burden to rebut qualified immunity, *see Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997*),* her lack of response means she has not met that burden.

Regardless, Officer Villarreal contends that the complaint fails to allege a plausible basis for overcoming his qualified immunity. Dkt. 12 at 6. He argues that the pleading does not "allege any specific conduct attributable" to him because "[t]here is not a single mention of Officer Villarreal throughout" the complaint. Dkt. 12 at 7. Indeed, Helaire's pleading uses a confusing patchwork of monikers that mix and match various officers' first and last names. *See, e.g.*, Dkt. 1-2 at 2 ("Christian Villarreal"), 5 ("Antonio Roman").

But even assuming those various permutations of Officer Villarreal's name target him specifically, the allegations nevertheless fail to show that he violated any constitutional right—let alone a clearly established right. *See* Dkt. 12 at 7. Helaire's claims against Officer Villareal should be dismissed.

### A.    Officer Villarreal is entitled to qualified immunity on the false arrest claims.

Generously construed, Helaire alleges that Officer Villarreal wrongfully arrested her twice—most recently on June 17, 2023, on an arson charge, and previously, on April 17, 2021, after an altercation in a car. Dkt. 1-2 at 4-5, 14. Villarreal contends that Helaire's assertions are conclusory and fail to state a

plausible false arrest claim. Dkt. 12 at 6-7. And even if a constitutional violation were sufficiently alleged, Officer Villareal argues that Helaire has not shown that it was clearly established. *Id.* at 7. The Court agrees.

To defeat qualified immunity on a false arrest claim, "plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

First, Helaire's allegations reflect that she was arrested for arson pursuant to a warrant. *See, e.g.*, Dkt. 1 at 6 ("I found out about the warrant"); Dkt. 1-2 at 21 ("I had to learn about a warrant"), (the "warrant already hung over me"). "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (quotation omitted); *see also, e.g., Casanova v. City of*

*Brookshire*, 119 F. Supp. 2d 639, 652 (S.D. Tex. 2000) (dismissing claim when plaintiff "was arrested pursuant to a facially valid arrest warrant").

For the arrest to violate the Fourth Amendment, Helaire would have to show that the officer's affidavit submitted to procure the warrant "contains inaccurate statements which materially affect its showing of probable cause." *See Davis v. Strain*, 676 F. App'x 285, 287 (5th Cir. 2017) (per curiam) (quotation omitted). That can occur if the officer "includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' *and* 'the allegedly false statement is necessary to the finding of probable cause.'" *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154 (1978); *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006)).

Nothing in the complaint satisfies that test. At most, the complaint characterizes the warrant as "wrongful" and "issued without proper procedure." *See* Dkt. 1 at 7. That conclusory assertion is insufficient to establish that the warrant was issued without probable cause, much less that an officer made any knowing, intentional, and materially false statements to obtain the warrant. And, as Villarreal notes, none of the allegations suggest that he was the officer who obtained the warrant. *See* Dkt. 12 at 7.

Villarreal further argues that the false arrest claim fails because a "failure to investigate complaints does not violate due process …." Dkt. 12 at 7. That is not always true. But Helaire's contention that her arrest "was based

solely on statements made by" Hanna, the victim, does not show that her arrest lacked probable cause. *See* Dkt. 1 at 6. "A victim's accusation identifying an individual as the perpetrator is generally sufficient to establish probable cause." *Johnson v. Bryant*, 1995 WL 29317, at *3 (5th Cir. 1995) (per curiam) (citing *Chambers v. Maroney,* 399 U.S. 42, 46 (1970)) (noting that "clearly probable cause would exist to arrest" the plaintiff because the victim named him as the perpetrator). "Reliance on a purported victim is justified unless there is an 'apparent reason' to disbelieve the victim's account." *Gemelli v. Nicosia*, 2024 WL 3617304, at *2 (5th Cir. Aug. 1, 2024) (quoting *Roy v. City of Monroe*, 950 F.3d 245, 256 (5th Cir. 2020)).

Helaire alleges no facts suggesting that Officer Villarreal had any reason to doubt Hanna's accusation. She does not even claim that Villarreal was the officer who spoke to Hanna. There is no basis to conclude that Officer Villareal violated the Fourth Amendment by arresting Helaire pursuant to a warrant.

Second, Helaire challenges her April 17, 2021 arrest after a passerby called the police upon seeing a third party (Newsome) assault Helaire in his car. *See* Dkt. 1-2 at 14. These allegations are likewise insufficient to overcome Officer Villarreal's qualified immunity.

Although the complaint describes the altercation that led police to be summoned, *see id.*, it does not state what facts and circumstances *Officer Villareal* would have known when making the arrest. "Whether [an] arrest [is]

10

constitutionally valid depends in turn upon whether, *at the moment the arrest was made*, the officers had probable cause to make it—*whether at that moment the facts and circumstance within their knowledge …were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.*" *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Yet the complaint provides no facts about what the passerby told the police or what Officer Villarreal would have observed when arriving at the scene 40 minutes later. *See* Dkt. 1-2 at 14. That Villarreal might have been mistaken about whether Helaire violated any law does not itself reflect that he lacked probable cause to arrest her. *See Mendenhall*, 213 F.3d at 230 ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))); *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested."). Officer Villarreal is entitled to qualified immunity.

## B. The false arrest claims are also time-barred.

Even if Helaire's allegations of false arrest were sufficient to overcome qualified immunity, they would still fail because they are barred by the statute of limitations. This issue is properly raised *sua sponte* because Helaire proceeds *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. Dkt. 3 (notice of

11

IFP status); *see Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (recognizing that district courts can raise a limitations "defense *sua sponte* in an action proceeding under 28 U.S.C. § 1915"); *see also, e.g.*, *Gonzales v. Wyatt*, 157 F.3d 1016, 1019, 1022 (5th Cir. 1998) (affirming dismissal under Section 1915(e)(2)(B)(i) because suit was barred by statute of limitations).

Because federal law does not supply a limitations period for Section 1983 claims, courts apply the forum state's statute of limitations for personal injury suits. *See Edmonds v. Oktibbeha Cnty.*, 675 F.3d 911, 916 (5th Cir. 2012) (Section 1983). In Texas, personal injury suits have a two-year limitations period. *See* Tex. Civ. Prac. & Rem. Code § 16.003. Helaire's false arrest claims are thus subject to a two-year limitations period.

The accrual date for Section 1983 claims, however, is governed by federal law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Here, the false arrest claims accrued on the dates of Helaire's respective arrests: June 17, 2023 and April 17, 2021. *See id.* at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023). The June 17, 2023 arrest claim thus expired on June 17, 2025 and the April 17, 2021 arrest claim expired on April 17, 2023. But Helaire brought this suit on July 30, 2025, over two

years after the most recent arrest.  Dkt. 1.  Her false arrest claims are time-barred as well as insufficiently pleaded.

### C. It is not a constitutional violation to shine a flashlight into a home.

Helaire further claims that "HPD Officers" violated her Fourth Amendment rights by shining a flashlight in her mother's home without a warrant.  *See* Dkt. 1-2 at 7, 10.  She names "Christian Villarreal" as the officer involved.  *See id.* at 2 (July 16, 2025 incident report).  It is unclear whether that hybridized name refers to Officer Villareal or to Officer Christian Rome, whom Helaire had also named as a defendant.  Given the ambiguity, Officer Villareal understandably did not address it.  But because Helaire is proceeding IFP, the Court examines the allegations under 28 U.S.C. § 1915(e)(2)(B)(ii) and concludes that, even assuming the allegations are aimed at Officer Villareal, they fail to state a cognizable claim.

First, shining a flashlight into a home or vehicle to better view the contents inside is not a search that can trigger Fourth Amendment protections. *See United States v. Dunn,* 480 U.S. 294, 305 (1987); *see also Texas v. Brown,* 460 U.S. 730, 740 (1983) ("[T]he use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.").  That alone forecloses recovery.

Second, Helaire alleges no facts that would give her a right to complain about actions at her *mother*'s house.  To claim Fourth Amendment protection, Helaire needed to have a legitimate expectation of privacy in her mother's home, like being an overnight guest.  *See Minnesota v. Carter*, 525 U.S. 83, 88-89 (1998).  No such allegation was made.  She has not pleaded any viable Section 1983 claims.

### III.    <u>Any state law claims should also be dismissed.</u>

Based on 28 U.S.C. § 1915(e)(2)(B)(ii), the Court also concludes that Helaire's stray references to Texas law provide no basis for relief against Officer Villareal.  This includes her laundry-list of references to the Texas Penal Code and Texas Code of Criminal Procedure in the attached June 14, 2025 incident report, which lists "Christian Villareal" (again, a hybrid name) as an involved officer.  *See* Dkt. 1-2 at 2, 9.

Neither the Texas Penal Code nor the Texas Code of Criminal Procedure creates a civil private cause of action.  *Lang v. Texas*, 2010 WL 5600204, at \*2 (E.D. Tex. Nov. 12, 2010) (citing *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied), and *Spellmon v. Sweeney*, 819 S.W.2d 206, 211 (Tex. App.—Waco 1991, no writ)), *adopted in relevant part*, 2011 WL 166977 (E.D. Tex. Jan. 19, 2011); *see also Doe v. Bonath*, 705 F. Supp. 3d 690, 706 (W.D. Tex. 2023) (dismissing official oppression claim under the Texas Penal Code because it does not create a civil cause of action); *Coltart v. Texas*, 2020

14

WL 5416515, at *8 (W.D. Tex. Aug. 6, 2020) (dismissing claims under Texas Code of Criminal Procedure).   Regardless, mere citations, unconnected to *specific* factual allegations, fail to state any plausible basis for relief.  *See, e.g.*, Dkt. 1-2 at 9 (merely listing statutory provisions with conclusory assertions). All claims against Officer Villareal should be dismissed with prejudice.

<u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendant Antonio Villarreal's motion to dismiss (Dkt. 12) be **GRANTED** and that all claims asserted against Villarreal be **DIMISSED WITH PREJUDICE**, including based on 28 U.S.C. § 1915(e)(2).  Plaintiff Nameah Helaire still has claims against Defendants Amtaro Montoya and Angel August.  *See* Dkt. 37 at 1 (noting that those Defendants were served).

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on May 14, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge